**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ronald Lee Manning,<br><br>          Petitioner,<br><br>vs.<br><br>Charles L. Ryan and Arizona Attorney General,<br><br>          Respondents. | No. CV 08-8149-PCT-MHM (MEA)<br><br>**AMENDED ORDER** |

Currently before the Court is Petitioner Ronald Lee Manning's Petition for Writ of Habeas Corpus by a Person in State Custody Pursuant to 28 U.S.C. § 2254, (Doc. 1), and Magistrate Judge Mark Aspey's Report and Recommendation. (Doc. 20). After reviewing the record, the Court issues the following Order.

**I.      BACKGROUND**

On November 14, 2008, Petitioner filed a petition seeking a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Doc. 1). Respondents filed an Answer on April 1, 2009. (Doc. 14). On June 19, 2009, Petitioner filed a reply. (Doc. 19). Magistrate Judge Mark Aspey filed a Report and Recommendation ("R & R") on January 15, 2010, recommending that Petitioner's habeas petition be denied in full and dismissed with prejudice. (Doc. 20). On January 29, 2010, Petitioner filed his objections to the R & R. (Doc. 23).

The state level factual and procedural background of this case is extensively and thoroughly detailed with citation to the record in Section I, "Procedural History," of Magistrate Judge Aspey's R & R. (Doc. 20, pp. 1–8). It does not appear that the Petitioner objects to the R & R's recitation of the facts, which includes detailed accounts of the evidence and testimony brought forth at trial and at the Post Conviction Relief ("PCR") evidentiary hearing. Instead, Petitioner takes issue with Magistrate Judge Aspey's interpretation of those facts as they pertain to his claims for relief. This Court, therefore, fully incorporates by reference Section I of the R & R into this Order, which should be read in conjunction with this Order. The Court also notes that this case stems from a June 22, 2000, Mohave County, Arizona indictment that charged petitioner with one count of conspiracy to commit first degree murder, one count of conspiracy to commit first degree escape, theft of a gun, and misconduct involving weapons. (Doc. 14, Exh. A). On January 26, 2001, a jury found Petitioner guilty of conspiracy to commit first degree murder, conspiracy to commit first degree escape, and weapons misconduct. Id., Exh. B. On appeal, the Arizona Court of Appeals vacated Petitioner's conviction for conspiracy to commit escape. Id., Exh. E.

## II.   STANDARD OF REVIEW

A district court must review the legal analysis in a Magistrate Judge's Report and Recommendation *de novo*. See 28 U.S.C. § 636(b)(1)(C). In addition, a district court must review the factual analysis in the Report and Recommendation *de novo* for those facts to which objections are filed. See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc); see also 28 U.S.C. § 636(b)(1)(C) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made"). "Failure to object to a magistrate judge's recommendation waives all objections to the judge's findings of fact." Jones v. Wood, 207 F.3d 557, 562 n. 2 (9th Cir. 2000).

/ / /

1          **A.      PRINCIPLES OF EXHAUSTION AND PROCEDURAL DEFAULT**

2                   **1.      EXHAUSTION**

3          Under 28 U.S.C. § 2254(b)(1) a federal court can only consider a petitioner's writ of

4    habeas corpus after the petitioner exhausts all available state remedies.   Coleman v.

5    Thompson, 501 U.S. 722, 731 (1991).  To properly exhaust state remedies, the petitioner

6    must give each state court the opportunity to rule upon the merits of his claims in a

7    procedurally appropriate manner.   28 U.S.C. § 2254(b)(1)(A); see also O'Sullivan v.

8    Boerckel, 526 U.S. 838, 848 (1999).  A complete round of appellate review, however, does

9    not include discretionary review before the Arizona Supreme Court when the prisoner was

10   not sentenced to death.   See Crowell v. Knowles, 483 F.Supp.2d 925 (D.Ariz.2007)

11   (discussing Swoops v. Sublett, 196 F.3d 1008, 1010 (9th Cir.1999)); Swoops, 196 F.3d at

12   1010 (stating that "Arizona has declared that its complete round [of appellate review] does

13   not include discretionary review before the Arizona Supreme Court."). Therefore, when

14   Petitioner is not sentenced to death, this requirement is satisfied if the petitioner has

15   presented his federal claim to the Arizona Court of Appeals on either direct appeal or in a

16   petition for post-conviction relief.

17          A claim is fairly presented if the petitioner described both the operative facts and the

18   federal legal theory on which his claim is based. Tamalini v. Stewart, 249 F.3d 895, 898 (9th

19   Cir. 2001).  A mere reference to the Constitution of the United States does not establish fair

20   presentation of a federal constitutional claim.   Gray v. Netherland, 518 U.S. 152, 162-63

21   (1996).  Similarly, general appeals to broad constitutional principles, such as due process,

22   equal protection, and the right to a fair trial, do not establish fair presentation of a federal

23   constitutional claim.  Lyons v. Crawford, 232 F.3d 666, 669 (9th Cir. 2000), amended on

24   other grounds, 247 F.3d 904 (9th Cir. 2001); Shimway v. Payne, 223 F.3d 982, 987 (9th Cir.

25   2000).  Even if the basis of a federal claim is "self evident" or if the claim would be decided

26   "on the same considerations" under state or federal law, the petitioner must make the federal

27   nature of the claim "explicit either by citing federal law or the decision of the federal courts."

28   Lyons, 232 F.3d at 668.  A state prisoner does not fairly present a claim to the state court if

1   the court must read beyond the petition to discover the federal claim.  Fundamentally, "if a

2   petitioner fails to alert the state court to the fact that he is raising a federal constitutional

3   claim, his federal claim is unexhausted regardless of its similarity to the issues raised in state

4   court."  Johnson v. Zenon, 88 F.3d 828, 830 (9th Cir.1996).

5                   **2.       PROCEDURAL DEFAULT**

6          If a petition contains claims that were not fairly presented in state court, then the

7   federal court must determine whether any state remedies remain available to the petitioner.

8   See Harris v. Reed, 489 U.S. 255, 268-70 (1989) (O'Connor, J., concurring); Rose v. Lundy,

9   455 U.S. 509, 519-20 (1982).  If remedies are still available in state court, the federal court

10  may dismiss the petition without prejudice pending the exhaustion of the state remedies.[1]

11  Rose, 455 U.S. at 520.  However, if the Court finds that the petitioner no longer has state

12  remedies available, his claims are procedurally defaulted and must be dismissed with

13  prejudice unless petitioner can show a miscarriage of justice, cause and prejudice, or actual

14  innocence that would excuse the default.  Teague v. Lane, 489 U.S. 288, 298-99 (1989);

15  Sandgathe v. Maass, 314 F.3d 371, 376 (9th Cir. 2002).  The standard for "cause and

16  prejudice" is one of discretion and is intended to be flexible and yielding to exceptional

17  circumstances only.  See Hughes v. Id. State Board of Corrections, 800 F.2d 905, 909 (9th

18  Cir. 1986).  Although both cause and prejudice must be shown to excuse a procedural

19  default, the Court need not examine the existence of prejudice if the petitioner fails to

20  establish cause.  See Engle v. Isaac, 456 U.S. 107, 134 n. 43 (1982); Thomas, 945 F.2d at

21  1123 n. 10.  Status as an inmate and lack of legal knowledge do not constitute cause for

22  failure to present claims to state courts.  Tacho v. Martinez, 862 F.2d 1376, 1381 (9th Cir.

23  1988) (finding that petitioner's arguments concerning his mental health and reliance upon

24  jailhouse lawyers did not constitute cause); Hughes, 800 F.2d at 909 (9th Cir. 1986) (finding

25

26          [1]Arizona Rule of Criminal Procedure 32.2(a) would now bar Petitioner from bringing
    any unexhausted federal claim in state court.  Accordingly, Petitioner has technically
27  exhausted, but procedurally defaulted any claim that was not fairly presented to the Arizona
    courts.  See Cook v. Schriro, 538 F.3d 1000, 1029–1030 (9th Cir. 2008).
28

- 4 -

1   that illiterate pro se petitioner's lack of legal assistance did not amount to cause to excuse a

2   procedural default).  Failure to establish cause may be excused "in an extraordinary case,

3   where a constitutional violation has probably resulted in the conviction of one who is actually

4   innocent."  See Murray v. Carrier, 477 U.S. 478, 496 (1986).

5       **B.     AEDPA STANDARD FOR RELIEF**

6           Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a

7   federal court "shall not" grant habeas relief with respect to "any claim that was adjudicated

8   on the merits in state court proceedings" unless the state court decision was (1) contrary to,

9   or an unreasonable application of, clearly established federal law as determined by the U.S.

10  Supreme Court, or (2) based on an unreasonable determination of the facts in light of the

11  evidence presented in the state court proceedings.  28 U.S.C. § 2254(d); see Williams v.

12  Taylor, 529 U.S. 362, 412-13 (2000).  A state court's decision is "contrary to" clearly

13  established precedent if (1) "the state court applies a rule that contradicts the governing law

14  set forth in [Supreme Court] cases," or (2) "if the state court confronts a set of facts that are

15  materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives

16  at a result different from [its] precedent." Id. at 405-06.  "A state court's decision can involve

17  an 'unreasonable application' of federal law if it either correctly identifies the governing rule

18  but then applies it to a new set of facts in a way that is objectively unreasonable, or extends

19  or fails to extend a clearly established legal principle to a new context in a way that is

20  objectively unreasonable." Hernandez v. Small, 282 F.3d 1132, 1142 (9th Cir.2002).  Thus,

21  a state court's application of federal law must be more than incorrect or erroneous, it must

22  be objectively unreasonable.  Lockyer v. Andrade, 538 U.S. 63, 75 (2003).  Furthermore,

23  "[w]hen applying these standards, the federal court should review the 'last reasoned decision'

24  by a state court." Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).

25  / / /

26  / / /

27  **III.   DISCUSSION**

28       **A.     Petitioner's Claims for Relief**

- 5 -

### 1.   Jury Instructions Regarding Multiple Conspiracies

Petitioner alleges that his Fifth and Sixth Amendment rights were violated by his conviction for both conspiracy to commit murder and conspiracy to commit escape. Petitioner asserts that the trial court's failure to instruct the jury "as to the treatment of multiple offenses as the objective of the same conspiracy" violated his Fifth and Sixth Amendment rights. (Doc. 1 at 13). Petitioner asserts that the trial judge erred in instructing the jury that they could find Petitioner guilty of both conspiracy to commit first degree murder and conspiracy to commit escape. Petitioner argues that the error "betrayed the fundamental principles of justice." (Doc. 19 at 9). Petitioner further suggests "that he suffered prejudice by the trial courts [sic] failure to instruct the jury on the fact they could only convict Petitioner of one charge of conspiracy, not both." (Doc. 23 at 4). Petitioner successfully exhausted this claim in state court.

"An instruction that was reasonably likely to have been misunderstood by the jury is subject to a harmless error analysis, because it is a trial-type error that occurred during the presentation of the case to the jury." Murtishaw v. Woodford, 255 F.3d 926, 973 (9th Cir. 2001) (internal quotations omitted). As this case involves a habeas petition, and because the improper jury instruction was a trial type error, Brecht v. Abrahamson, 507 U.S. 619 (1993), controls. See Murtishaw, 255 F.3d at 973. Under Brecht, the inquiry "is whether, in light of the record as a whole," the allegedly erroneous jury instruction "had a substantial and injurious effect or influence in determining the jury's verdict." Brecht, 507 U.S. at 638.

Petitioner has not demonstrated that the alleged error had such an effect or influence. Instead, Petitioner argues that the jury instruction "confused the jury into a 'contrary to law' verdict. (Doc. 19 at 8). In support of this assertion, Petitioner relies on the Ninth Circuit's recent decision in U.S. v. Hernandez, 476 F.3d 791 (9th Cir. 2007). The facts and holding of Hernandez, however, are inapposite. In that case, the Ninth Circuit determined that the trial court's failure to instruct the jury on a lesser included offense was erroneous because the only options remaining for the jury were to convict the defendant of the greater offense or to acquit. Id. at 802. Petitioner's situation differs significantly from that of the defendant

in <u>Hernandez</u>.  In Petitioner's case, the jury had the option of finding him guilty of both conspiracies, one conspiracy, or neither conspiracy.  Thus, the jury was not presented with the situation where they could either convict Petitioner of conspiracy to commit first degree murder or acquit him.  Instead, the jury had the option of returning a guilty verdict on the single ground of conspiracy to commit escape.  The fact that the jury found him guilty of both crimes does not, by itself, demonstrate that the allegedly erroneous jury instruction had a "substantial or injurious effect or influence in determining the jury's verdict." <u>Brecht</u>, 507 U.S. 638.

Furthermore, Petitioner's argument that the state "Court of Appeals approach to the double jeopardy problem did not effectivly [sic] protect Petitioners [sic] rights under the Fifth and Sixth Amendments" is unpersuasive.  Petitioner asserts that, although constitutionally permissible, the state Court of Appeal's decision to vacate the conviction for conspiracy to commit escape was not adequate to cure the prejudicial effect of the trial court's failure to properly instruct the jury.  (Doc. 23 at 6).  As already discussed, however, Petitioner did not suffer any cognizable harm as a result of the trial court's inadequate jury instruction.  Thus, insofar as Petitioner's objection is based on the existence of a harm arising from inadequate jury instructions, and to the extent that the Court finds that he suffered no such harm, the objection is without merit.  Accordingly, Petitioner is not entitled to habeas relief on this ground.

### 2.    Trial Court's Failure to Enter Directed Verdicts

Petitioner contends that the trial court violated his Fifth, Sixth, and Fourteenth Amendment rights by not entering judgment of acquittal on the conspiracy counts.  The record is clear that on direct appeal Petitioner failed to notify the state court that he was raising this issue as a constitutional claim.  Petitioner may not now return to state court because Arizona Rule of Criminal Procedure 32.2(a) bars him from doing so.  Accordingly, because Petitioner did not fairly present this claim to the state court, it will be deemed procedurally defaulted unless Petitioner can show a miscarriage of justice, cause and prejudice, or actual innocence that would excuse the default.  <u>See</u> <u>Teague</u>, 489 U.S. at

298–99.

Petitioner primarily argues that this claim is not procedurally defaulted because he is actually innocent. In all of his filings with the Court, Petitioner has consistently stated that there was insufficient evidence placed before the jury to support the conclusion that he was part of a plan to commit first degree murder. (Doc. 1 at 7, Doc. 19 at 11, Doc. 23 at 8). In order to demonstrate actual innocence, a habeas petitioner must demonstrate that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." Schlup v. Delo, 513 U.S. 298, 327 (1995). Additionally, where, as here, the Petitioner has been convicted by a jury, the standard of review is highly deferential. See Jackson v. Virginia, 443 U.S. 307, 319 (1979) (holding "the relevant question is whether, after viewing the evidence in light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.") (emphasis in original). Furthermore, under AEDPA, this Court must take an even more deferential standpoint. See Juan H. v. Allen, 408 F.3d 1226, 1274 (9th Cir. 2005) (holding that "[a]fter AEDPA, we apply the standards of Jackson with an additional layer of deference.")

After reviewing the record, it is apparent that Petitioner cannot satisfy this hefty burden. The Arizona Court of Appeals found that "the State presented considerable direct and circumstantial evidence that [Petitioner] was part of a conspiracy to break Goldberg out of jail" and that "the evidence that the conspirators intended to kill a deputy, if the deputy lawfully resisted their unlawful attempt to break Goldberg out of jail, was sufficient to support a conviction for Conspiracy to Commit First-Degree Murder." (Doc. 14, Exh. E at 5, 6). Viewing the evidence in a light most favorable to the Respondent, this Court agrees with the findings of the Arizona Court of Appeals. For example, Robert Olson testified that during a conversation with David Goldberg, the alleged target of the jailbreak, Goldberg stated that an individual named Ron would be participating in the escape attempt. (Doc. 14, Exh. T at 99). Furthermore, Petitioner was seen on the day of the alleged escape with the other participants, performing activities such as purchasing ammunition and bolt cutters and removing the back seat of a minivan. (Doc. 14, Exh. V at 169, Exh. W at 249). In light of

the inculpatory evidence presented at trial and the highly deferential standpoint this Court must take, it is apparent that Petitioner cannot avoid procedural default by showing actual innocence.

Alternatively, Petitioner argues that his claims are not procedurally defaulted because "his Court appointed learned counsels failed to federalize his claims in state court." (Doc. 23 at 7). Essentially, Petitioner claims that his post-conviction counsel was constitutionally ineffective. This argument, however, fails as a matter of law. The Supreme Court has been clear that there "is no constitutional right to an attorney in state post-conviction proceedings." Coleman v. Thompson, 501 U.S. 722, 752 (1991). Accordingly, "a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings." Id. Furthermore, the Ninth Circuit has stated that "[i]neffective assistance of post-conviction counsel cannot provide cause to excuse procedural default." Martinez v. Schriro, 623 F.3d 731, 743 (9th Cir. 2010). Therefore, Petitioner has failed to demonstrate cause for his failure to exhaust this claim in state court, and the claim is procedurally defaulted.

### 3.     Hearsay Testimony

Petitioner contends his Fifth and Sixth Amendment rights were violated when the trial court admitted hearsay statements by an alleged co-conspirator. Specifically, Petitioner argues that the trial court erred by admitting the testimony of two inmates, Robert Olsen and David England. Petitioner asserts that the testimony consisted of out-of-court statements of Dennis Schilinski, an alleged co-conspirator, and that the testimony was inadmissible hearsay. Petitioner also objects to the admission of the testimony because he was not allowed to confront Mr. Schilinski in violation of the Sixth Amendment's Confrontation Clause. (Doc. 23 at 11). Petitioner successfully exhausted this claim in state court.

The Arizona Court of Appeals determined that Mr. Schilinski's statements were made in furtherance of a conspiracy, and thus, that the testimony of Mr. Olson and Mr. England was not inadmissible hearsay. (Doc. 14, Exh. E). In reaching that conclusion, the Court of Appeals relied on Arizona Rule of Evidence 801(d)(2)(E), which reads, in pertinent part, "a statement is not hearsay if . . . the statement is offered against a party and is . . . a statement

1    by a coconspirator of a party during the course and in furtherance of the conspiracy." (Doc.

2    14, Exh. E). The Court of Appeals reasoned that "Schilinski only disclosed the details of

3    the escape plan – the timing, location, names of the two men involved, and so forth – in order

4    to enlist the inmate's help in making bail so that Schilinski could participate in the jailbreak."

5    Id. Accordingly, the Court of Appeals found, pursuant to Rule 801(d)(2)(E), that the

6    statements of Mr. Schilinski were not hearsay. Id.

7         The Supreme Court has held that "the co-conspirator exception to the hearsay rule is

8    firmly enough rooted in our jurisprudence that . . . a court need not independently inquire into

9    the reliability of such statements." Bourjaily v. U.S., 483 U.S. 171, 183 (1987).

10   Additionally, the co-conspirator exception does not require that the declarant be unavailable

11   for a party to introduce the statement. U.S. v. Inadi, 475 U.S. 387, 399-400 (1986).

12   Furthermore, because statements by co-conspirators are not testimonial, they do not invoke

13   the Confrontation Clause. See Crawford v. Washington, 541 U.S. 36, 56 (2004).

14   Accordingly, it does not appear that the decision to admit the testimony of Mr. Olson and

15   Mr. England without giving the Petitioner the right to confront Mr. Schilinski was contrary

16   to federal law or an unreasonable interpretation of Supreme Court precedent. Therefore,

17   Petitioner is not entitled to relief on this ground.

18                    **4.    Trial Court's Refusal to Change Venue**

19        Petitioner's habeas petition asserts three separate reasons that his Fifth and Sixth

20   Amendment rights were violated by the trial court's decision to deny change of venue: (1)

21   pretrial publicity prevented Petitioner from receiving a fair trial; (2) the jurors' ability to visit

22   the alleged scene of the crime thwarted Petitioner's right to a fair and impartial jury, and (3)

23   the trial judge, Judge Conn, was in possession of evidence obtained through ex parte

24   communications. (Doc. 1 at 18–19). However, the record indicates that Petitioner failed to

25   raise this constitutional claim in state court. Petitioner may not now return to state court to

26   raise this claim because Arizona Rule of Criminal Procedure 32.2(a) bars him from doing so.

27   Accordingly, because Petitioner did not fairly present this claim to the state court, it will be

28   deemed procedurally defaulted unless Petitioner can show a miscarriage of justice, cause and

1   prejudice, or actual innocence that would excuse the default.  See Teague, 489 U.S. at

2   298–99.

3        Petitioner again argues that the cause of his failure to exhaust was that his appointed

4   post-conviction counsel failed to preserve the claim for federal review.  (Doc. 23 at 13).  As

5   previously stated, Petitioner has no constitutional right to appellate counsel in post-

6   conviction proceedings and no claim of ineffective assistance arising from those proceedings.

7   See Coleman, 501 U.S. at 752.  Furthermore, the Ninth Circuit has stated that "[i]neffective

8   assistance of post-conviction counsel cannot provide cause to excuse procedural default."

9   Martinez, 623 F.3d at 743.  Accordingly, Petitioner has failed to show cause for his failure

10  to exhaust the claim in state court.  Therefore, Petitioner's claim is procedurally defaulted

11  and the Court will not reach the merits of the claim.

12               **5.     Motion to Suppress Evidence**

13       Petitioner maintains that the trial court violated his Fourth and Fourteenth Amendment

14  rights by denying his motion to suppress evidence.[2]  The Supreme Court has emphasized that

15  "where the State has provided an opportunity for full and fair litigation of a Fourth

16  Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the

17  ground that evidence obtained in an unconstitutional search and seizure was introduced at

18  his trial."  Stone v. Powell, 428 U.S. 465, 494 (1976).  "The relevant inquiry is whether

19  petitioner had the opportunity to litigate his claim, not whether he did in fact do so or even

20  whether the claim was correctly decided."  Ortiz-Sandoval v. Gomez, 81 F.3d 891, 899 (9th

21  Cir. 1996).

22       Petitioner asserts that he was denied a full and fair opportunity to litigate his Fourth

23  Amendment claim because the trial court failed to "transcribe the (9-14-00) Hearing on

24  Motion to Suppress."  (Doc. 23 at 16).  Specifically, Petitioner contends that court reporters

25  Sandra Brice and Alexis Taylor refused to prepare for him a copy of the transcript of the

26

27       _____

28       [2]To the extent that Petitioner has not identified how his Fourteenth Amendment rights
     have been violated, the Court will not consider that claim.  See Lyons, 232 F.3d at 669.

1   suppression hearing.  (Doc. 1, Exh. 2 at 50).  Petitioner further alleges that because he did

2   not possess the transcript prior to filing his opening brief with the Arizona Court of Appeals,

3   he was  prevented from presenting an effective defense.  Id. at 51.  Petitioner has not,

4   however, made any suggestion as to how his inability to access the transcripts hindered his

5   defense preparation.  Instead, Petitioner appears to be making an unqualified assertion that

6   having the transcript available would somehow have improved his defense.  Furthermore the

7   fact that the Arizona Court of Appeals thoroughly reviewed the transcript of the suppression

8   hearing prior to rendering its decision significantly weakens Petitioner's argument that he

9   was unable to fully and fairly litigate his claim.  (Doc. 14, Exh. E at 12–13).  Therefore,

10  because the Arizona Court of Appeals was able to independently review the suppression

11  hearing transcript and because Petitioner has not demonstrated that the transcript may have

12  actually assisted in his defense,  Petitioner was not deprived of the ability to litigate his

13  claim.  See Putnam v. Schriro, 2006 WL 680550 at *9 (D. Ariz. March 14, 2006) (finding

14  that "lack of access to transcripts does not preclude a petitioner from commencing a

15  collateral proceeding.") (citing United States v. Lewis, 605 F.2d 379, 379 (8th Cir. 1979)

16  (holding that prisoner does not have an absolute right to transcripts to collaterally attack

17  sentence.)).  Accordingly, Petitioner is not entitled to relief on this ground.

18              **6.    Admission of State's Exhibits**

19          Petitioner argues that the trial court erred by admitting into evidence two of the state's

20  exhibits, specifically two letters allegedly written by Petitioner, without proper disclosure to

21  Petitioner.  Petitioner asserts this violated his Sixth and Fourteenth Amendment rights.

22  Petitioner failed to "fairly present" this claim to the state court.  At no point in his appellate

23  brief did Petitioner argue that the admission of the evidence violated his constitutional rights.

24  Instead, Petitioner argued that the admission of the evidence violated the Arizona Rules of

25  Evidence and that the trial court's decision to admit the evidence was an abuse of discretion.

26  Petitioner may not now return to state court to raise this claim because Arizona Rule of

27  Criminal Procedure 32.2(a) bars him from doing so.  Accordingly, because Petitioner did not

28  fairly present this claim to the state court, it will be deemed procedurally defaulted unless

1  Petitioner can show a miscarriage of justice, cause and prejudice, or actual innocence that

2  would excuse the default.  See Teague, 489 U.S. at 298–99.

3        Petitioner again argues that the cause of his failure to exhaust was that his appointed

4  post-conviction counsel failed to preserve the claim for federal review.  (Doc. 23 at 16–17).

5  As previously stated, Petitioner has no constitutional right to appellate counsel in post-

6  conviction proceedings and cannot substantiate a claim of ineffective assistance arising from

7  those proceedings.  See Coleman, 501 U.S. at 752.  Furthermore, the Ninth Circuit has stated

8  that "[i]neffective assistance of post-conviction counsel cannot provide cause to excuse

9  procedural default."  Martinez, 623 F.3d at 743.  Accordingly, Petitioner has failed to show

10  cause for his failure to exhaust the claim in state court.  Therefore, Petitioner's claim is

11  procedurally defaulted and the Court will not reach the merits of the claim.

12                **7.    Petitioner's Counsel's Handling of an Alleged Plea Offer**

13        Petitioner asserts that his Sixth Amendment rights were violated because he proved

14  by a preponderance of the evidence at the Rule 32 evidentiary hearing that his trial counsel

15  ineffectively handled the last plea offer.  (Doc. 1 at 24, Doc. 19 at 28–30, Doc. 23 at

16  19–20).  Petitioner properly exhausted this claim in state court.

17        To prevail on a claim of ineffective assistance of counsel, a petitioner must show that

18  counsel's performance was deficient and that counsel's deficient performance prejudiced his

19  defense.  Strickland v. Washington, 466 U.S. 668, 687 (1984).  The performance inquiry asks

20  whether counsel's assistance was reasonable considering all the circumstances.  Id. at 688-89

21  (referring to prevailing norms of practice regarding how best to represent a criminal

22  defendant).  "[A] court must indulge a strong presumption that counsel's conduct falls within

23  the wide range of reasonable professional assistance; that is, the defendant must overcome

24  the presumption that, under the circumstances, the challenged action might be considered

25  sound trial strategy."  Id. at 689 (internal quotation and citation omitted).

26        A petitioner must affirmatively prove prejudice by "show[ing] that there is a

27  reasonable probability that, but for counsel's unprofessional errors, the result of the

28  proceeding would have been different."  Id. at 694.  "A reasonable probability is a probability

1   sufficient to undermine confidence in the outcome." Id. "The assessment of prejudice

2   should proceed on the assumption that the decision-maker is reasonably, conscientiously, and

3   impartially applying the standards that govern the decision." Id. at 695. If the prosecution's

4   case is weak, there is a greater likelihood that the outcome of the trial would have been

5   different. See Johnson v. Baldwin, 114 F.3d 835, 839-40 (9th Cir.1997).

6        Under the AEDPA, this Court's review of the state court's decision is subject to

7   another level of deference. Bell v. Cone, 535 U.S. 685, 698-99, 122 S.Ct. 1843, 152 L.Ed.2d

8   914 (2002); see Knowles v. Mirzayance, ---U.S. ----, ----, 129 S.Ct. 1411, 1420 (2009)

9   (noting that a "doubly deferential" standard applies to Strickland claims under the AEDPA).

10  Therefore, to prevail on an ineffective assistance of counsel claim, Petitioner must make the

11  additional showing that the state court, in ruling that counsel was not ineffective, applied

12  Strickland in an objectively unreasonable manner. 28 U.S.C. § 2254(d)(1).

13       Finally, a court need not address both components of the inquiry, or follow any

14  particular order in assessing deficiency and prejudice. Strickland, 466 U.S. at 697. If it is

15  easier to dispose of a claim on just one of the components, then that course should be taken.

16  Id.

17       Because the prejudice arising from the alleged ineffectiveness is relatively clear,

18  namely a shorter sentence had Petitioner accepted the plea agreement, the Court's inquiry

19  will focus on the deficiency prong of Strickland. After an evidentiary hearing on the issue

20  of ineffective assistance of counsel, the state court made four determinations: (1) that "the

21  [Petitioner] was made aware of the offer to a stipulated ten-year prison sentence before going

22  to trial;" (2) that "the [Petitioner] unequivocally rejected that offer and chose to go to trial;"

23  (3) that "his testimony years later that he would have accepted the offer is not credible;"and

24  (4) that "the [Petitioner] was not denied effective assistance of counsel." (Doc. 14, Exh. O).

25  Although the state court did not explicitly apply Strickland in determining that Petitioner was

26  not denied effective assistance of counsel, that failure alone is not fatal to the state court's

27  determination. See Davis v. Palmateer, 27 Fed.Appx. 854, 856 (9th Cir. 2001) (finding that

28  although a state court did not explicitly apply Strickland, the fact that it "generally applied

1   the correct legal standard" was sufficient for the conclusion that its "decision was [not]

2   contrary to clearly established federal law.").   Based on the record, it appears that the state

3   court's analysis functionally centered on the deficiency prong of the <u>Strickland</u> analysis.  By

4   concluding that Petitioner's counsel alerted Petitioner of the plea offer, the state court

5   effectively determined that Petitioner's counsel was not unconstitutionally deficient.

6   Therefore, to the extent that the state court applied the *principles* of <u>Strickland</u>, albeit without

7   explicitly invoking its name, the Court is satisfied that the application of <u>Strickland</u> was not

8   objectively unreasonable.

9        Furthermore, this Court must give substantial weight to the factual findings of the

10  state court.  <u>See</u> <u>Taylor v. Maddox</u>, 366 F.3d 992, 999 (9th Cir. 2004) (finding that "a federal

11  court may not second-guess a state court's fact-finding process unless, after review of the

12  state-court record, it determines that the state court was not merely wrong, but actually

13  unreasonable.").  Specifically, this Court must give significant deference to the factual

14  determination that the Petitioner was aware of the stipulated plea agreement before going to

15  trial.   Based on the record, it does not appear that this factual determination was

16  unreasonable.  For example, there was testimony from two separate counsel of Petitioner

17  that they presented him with plea offers and that Petitioner was unwilling to accept any offer.

18  (Doc. 28, Exh. FF).  The state court found "testimony of the attorneys to be more persuasive

19  than that of the [Petitioner]."  (Doc. 14, Exh. O).  Thus, to the extent that  Petitioner's

20  ineffective assistance claim is premised on the allegation that he was never aware of the plea

21  agreement, the factual determination of the state court to the contrary undermines Petitioner's

22  claim.

23       Petitioner also argues that he received ineffective assistance of counsel because his

24  counsel never made a formal recommendation regarding the alleged plea offer.  (Doc. 23 at

25  19).  According to the Ninth Circuit, "the seminal decision on ineffectiveness of counsel in

26  plea situations" is <u>McMann v. Richardson</u>, 397 U.S. 759 (1970).  <u>See</u> <u>Turner v. Calderon</u>,

27  281 F.3d 851, 880 (9th Cir. 2002).  In <u>McMann</u>, the Supreme Court held that when assessing

28  the adequacy of counsel in plea situations, the relevant inquiry is "not whether counsel's

advice was right or wrong, but . . . whether that advice was within the range of competence demanded of attorneys in criminal cases." Turner, 281 F.3d at 880 (citing McMann, 397 U.S. at 771) (internal quotations omitted). "Thus, in order for [Petitioner] to establish a claim of ineffective assistance, he 'must demonstrate gross error on the part of counsel....'" Turner, 281 F.3d at 880 (citing McMann, 397 U.S. at 772). The Ninth Circuit has adopted an interpretation of that standard from the Third Circuit, which requires "a defendant to demonstrate that 'the advice ... he received was so incorrect and so insufficient that it undermined his ability to make an intelligent decision about whether to accept the [plea] offer.'" Turner, 281 F.3d at 880 (citing United States v. Day, 969 F.2d 39, 43 (3rd Cir. 1992)).

The relevant inquiry then is not whether Petitioner's counsel ever made a formal recommendation, it is whether counsel provided Petitioner with sufficient information in order for him to make his own decision. See Turner, 281 F.3d at 880. Based on the testimony of Petitioner's counsel, it is apparent that he was at all times aware not only of the plea offers available to him, but also of the potential risks of going to trial. (Doc. 28, Exh. FF). Furthermore, the testimony of Petitioner's counsel demonstrates that they were under the impression that Petitioner never intended to accept any plea offer that was presented to him. Id. In light of these facts, it was not the responsibility of Petitioner's counsel provide detailed recommendations about every plea offer that was made. Instead, it is sufficient that Petitioner's counsel presented him with each offer and explained to him the benefits of pleading and the risks of going to trial. See Turner, 281 F.3d at 880. Accordingly, Petitioner cannot demonstrate deficiency of counsel and is not entitled to relief on this ground.

### 8.   Petitioner's Counsel's Failure to Object to the Multiplicitous Indictment

Petitioner alleges that his Sixth Amendment right to the effective assistance of counsel was violated because his trial counsel failed to object to the multiplicitous indictment before the start of the trial. Applying the legal standard for ineffective assistance set forth *supra*, the Court finds that Petitioner was not prejudiced by counsel's alleged failure to object to the

multiplicitous indictment.  Although Petitioner was originally convicted of multiplicitous charges, one of those convictions was subsequently vacated by the Arizona Court of Appeals. It does not appear that the Arizona Court of Appeals' approach to the multiplicitous conviction was inconsistent with federal law or an unreasonable interpretation of Supreme Court precedent.  See Rutledge v. U.S., 517 U.S. 292, 307 (1996) (finding that the proper remedy where an individual is impermissibly convicted of two conspiracies is to vacate one of the convictions).  Accordingly, because Petitioner cannot demonstrate any prejudice giving rise to an ineffective assistance of counsel claim, he is not entitled to further relief on that ground.

**9.    Judge Conn's Failure to Recuse Himself from Petitioner's Rule 32 Proceedings**

Petitioner asserts that Judge Steven Conn, who presided over Petitioner's jury trial, should have recused himself from Petitioner's subsequent Rule 32 proceedings.  Petitioner argues that Judge Conn's refusal to recuse himself constituted a violation of Petitioner's Sixth and Fourteenth amendment rights.    Respondent concedes that Petitioner exhausted this claim in state court.  (Doc.  14 at 48).

Prior to the commencement of the post-conviction proceedings, Petitioner filed a Motion for Change of Judge.  (Doc. 14, Exh. I).  Petitioner asserted that Judge Conn should recuse himself because the plot to break Goldberg out of jail was to occur on a day that Goldberg was to appear before Judge Conn and because Judge Conn had been made aware of the plot before trial.  (Doc. 19 at 31–32).  Specifically, Petitioner argued that Judge Conn had been made aware prior to the start of trial of potential gunplay in and around the courthouse and of increased security measures at the courthouse at the time of the plot caused him to become biased against Petitioner.  Id.  at 32–33.  Following Petitioner's motion, an evidentiary hearing was held before Judge Weiss to determine whether Judge Conn should recuse himself.  Judge Weiss determined that Petitioner raised two issues: (1) whether Judge Conn was a necessary witness to determine if Petitioner's trial counsel was ineffective in failing to move under Rule 10.1 of the Arizona Rules of Criminal Procedure for change of

judge for cause, and (2) whether Judge Conn could not be impartial with regard to Petitioner's Rule 32 claims due to the receipt of extra judicial information.  (Doc.  14, Exh. K).  Judge Weiss denied the portion of the motion regarding Rule 10.1 because "there [was] nothing in the record to demonstrate Judge Conn [had] any relevant testimony."  Id.  Judge Weiss also denied the portion of the motion alleging bias because Petitioner did not demonstrate that any extrajudicial communications that may have taken place during the trial caused Judge Conn to become biased.  Id.

Because Petitioner did not assert a constitutional right in conjunction with Judge Conn's failure to recuse himself because he might be called as a witness, that claim was not fairly presented to the state courts and shall not be considered.  Instead, the focus of Petitioner's claim is whether Judge Conn was so unconstitutionally biased as to be unable to preside over Petitioner's Rule 32 proceedings.  The essential inquiry in this context is whether Judge Conn "display[ed] a deep-seated favoritism or antagonism that [made] fair judgment impossible."  Liteky v. U.S., 510 U.S. 540, 555 (1994).  However, the Court must also give significant deference to the state court's factual determinations.  See Taylor, 366 F.3d at 999; Villafuerte v. Steward, 111 F.3d 616, 630 (9th Cir.  1994) (finding that a state court's "finding of lack of bias is entitled to a presumption of correctness.").  Accordingly, so long as Judge Weiss' determination that Judge Conn was not biased is reasonable, it is entitled to deference.

At the evidentiary hearing before Judge Weiss, Judge Conn testified that he was aware of certain heightened security measures that the Mohave County Sheriff's Office was taking in and around the courthouse at the time of the escape plot.  (Doc.  28, Exh.  EE).  That testimony, by itself, does not reflect that Judge Conn was aware of any fact that would cause him to become biased.[3]  Nonetheless, Petitioner points to evidence in the record that Judge

---

[3]To the extent that Petitioner cited to Tenth Circuit precedent in his Motion for Change of Judge at the state level, those cases are inapplicable.  In Nichols v. Alley, 71 F.3d 347 (10th Cir. 1995), the Tenth Circuit concluded that a trial judge should have recused himself because an explosion outside the courthouse caused significant damage to the

1   Conn may have been aware of the possibility that firearms would be used in the courthouse.

2   Id. For example, there was testimony from Officer Dean Brice, the husband of Judge Conn's

3   court reporter, Sandra Brice, that he had told his wife that there might be gunfire in

4   connection with the alleged escape plot.  Id.  It is unclear, however, whether Judge Conn

5   himself was ever made aware of the possibility of gunfire.  For example, Judge Conn, Sandra

6   Brice, and Dean Brice all provided testimony tending to indicate that Judge Conn was never

7   actually aware of the possibility of gunfire.  Id.  Testimony from Officer Ernest Severson,

8   however, suggests that Sandra Brice informed Judge Conn that gunplay might take place.

9   Id.

10         After reviewing the record, it is apparent that Judge Weiss' determination that Judge

11   Conn was not unconstitutionally biased was based on substantial evidence in the record and

12   was reasonable.  Petitioner has failed to make a sufficient showing that Judge Conn exhibited

13   deep-seated favoritism or antagonism towards any party.  See Liteky, 510 U.S. at 555.

14   Therefore, that determination is entitled to deference.   Thus, the state court's resolution of

15   Petitioner's claim was not contrary to federal law or an unreasonable interpretation of

16   Supreme Court precedent.  Accordingly, Petitioner is not entitled to relief on this ground.

17                   **10.    Petitioner's Counsel's Failure to Object to Jury Instructions**

18         Petitioner alleges that his Sixth Amendment right to the effective assistance of counsel

19   was violated because his trial counsel failed to object to the jury instruction permitting the

20   jury to find Petitioner guilty of conspiracy to commit acts of which petitioner had no

21   knowledge.  Specifically, Petitioner disputes the propriety of the following instruction: "A

22   conspirator is liable for all criminal acts committed by a coconspirator during and in

23   furtherance of the conspiracy." (Doc.14, Exh. L).  Petitioner argues that the jury instruction

24   ────────────────

25   building and injured the judge's staff.  Similarly, in United States v. Greenspan, 26 F.3d 1001
     (10th Cir. 1994), the Tenth Circuit concluded that a judge was required to recuse himself
26   after the FBI investigated death threats by the defendant against the judge.  Those cases,
     however, are inapposite.  There is nothing in the facts of this case  indicating that any violent
27   act took place at the courthouse or that Petitioner made any threats on Judge Conn's life.
     Accordingly, the Tenth Circuit cases that Petitioner relied on below are inapplicable.
28

1   was inappropriate because it too closely mirrors the holding of <u>Pinkerton v. United States</u>.

2   328 U.S. 640 (1946).  <u>Pinkerton</u> held that if a jury found a person guilty of a conspiracy, that

3   person may also be criminally liable for any criminal act committed by a coconspirator in

4   furtherance of the conspiracy.  <u>Id</u> at 647.  Petitioner correctly asserts that Arizona does not

5   follow the holding in <u>Pinkerton</u>.  <u>See</u> <u>State v. Cordero</u>, 174 Ariz.  556, 557–558, 851 P.2d

6   855, 856–857 (Ariz.  Ct.  App.  1992).  In sum, Petitioner argues that the <u>Pinkerton</u>-like

7   instruction could have permitted the jury to find him guilty based only on the actions of his

8   coconspirators.

9        As discussed in section 1, *supra*, "[a]n instruction that was reasonably likely to have

10  been misunderstood by the jury is subject to a harmless error analysis, because it is a trial-

11  type error that occurred during the presentation of the case to the jury." <u>Murtishaw</u>, 255 F.3d

12  at 973.  As this case involves a habeas petition, and because the improper jury instruction

13  was a trial type error, <u>Brecht</u>, controls.  <u>See</u> <u>Murtishaw</u>, 255 F.3d at 973.  Under <u>Brecht</u>, the

14  inquiry "is whether, in light of the record as a whole," the allegedly erroneous jury

15  instruction "had a substantial and injurious effect or influence in determining the jury's

16  verdict." <u>Brecht</u>, 507 U.S. at 638.

17       At Petitioner's trial, before submitting the case to the jury, the judge issued a series

18  of instructions.  (Doc. 28, Exh. DD).  Those instructions included language pertaining to,

19  *inter alia*, the burden of proof that the prosecution was required to meet, the elements of the

20  crimes that Petitioner was charged with, what the jury must find in order to conclude that a

21  conspiracy was formed, and that the jury must consider the charges against each defendant

22  separately.  <u>Id.</u>  As Petitioner asserts, however, the trial judge also erroneously instructed the

23  jury that "a conspirator is liable for all criminal acts committed by a co-conspirator during

24  and in furtherance of the conspiracy."  <u>Id.</u>  Although the preceding instruction is erroneous

25  under Arizona law, viewing the record as a whole this instruction would not have had an

26  effect on the jury's verdict.  Petitioner was not convicted of any substantive crimes

27  committed by a coconspirator as the instruction would have allowed.  Instead, the jury found

28  Petitioner guilty only of the crimes that he was directly involved with.  Furthermore, it

appears from the instructions that the jury was informed of (1) the elements of Conspiracy to Commit First Degree Murder, (2) the elements of Conspiracy to Commit Escape, and (3) of the fact that they were required to assess the evidence against Petitioner separately from the other defendants.   Petitioner has failed to demonstrate that the jurors ignored the aforementioned correct instructions and instead found him guilty based solely on the erroneous instruction.   The state court, in reaching a similar conclusion, found that the erroneous instruction "may have been superfluous at worst." (Doc. 14, Exh. M).   Because the jury does not appear to have utilized the erroneous instruction in reaching its verdict, the Court agrees.   Therefore, although Petitioner is correct that the jury instruction may have been erroneous, he has failed to demonstrate that the instruction had a substantial and injurious effect on the jury's verdict.   Accordingly, Petitioner is not entitled to relief on this ground.

**11.   Petitioner's Counsel's Failure to Object to the Jury Verdict**

Petitioner contends that his trial counsel was constitutionally ineffective for failure to object to the jury verdict.   Although Petitioner was originally convicted of multiplicitous charges, one of those convictions was subsequently vacated by the Arizona Court of Appeals. It does not appear that approach of the Arizona Court of Appeals' to the multiplicitous conviction was inconsistent with federal law or an unreasonable interpretation of Supreme Court precedent.   See Rutledge v. U.S., 517 U.S. 292, 307 (1996) (finding that the proper remedy where an individual is impermissibly convicted of two conspiracies is to vacate one of the convictions).   Accordingly, because Petitioner cannot demonstrate any prejudice giving rise to an ineffective assistance of counsel claim, he is not entitled to further relief on that ground.

**12.   Petitioner's Counsel's Failure to Call Dennis Schilinski as a Witness**

Petitioner asserts that his trial counsel was ineffective for failing to call Mr. Dennis Schilinski to testify.   (Doc. 1 at 17).   The state alleged that Mr. Schilinski and Petitioner were co-conspirators.   Petitioner has properly exhausted this claim at the state court level.

1  As outlined *supra*, in order to raise a cognizable claim under the Sixth Amendment for

2  ineffective assistance of counsel, Petitioner must be able to demonstrate deficiency of

3  counsel and prejudice arising from that deficiency.  See Strickland, 466 U.S. at 687.

4       After hearing Petitioner's argument, the state court determined that "testimony from

5  Schilinski that he did not know of or conspire with the [Petitioner], even if believed by the

6  jury, would not have exonerated the [Petitioner] from guilt on the conspiracy charge." (Doc.

7  14, Exh. M).  In reaching that conclusion, the state court found that under Arizona Revised

8  Statute 13-1003(B), calling "Schilinski as a defense witness would have had no likely impact

9  on the outcome of this case."[4]  Id.  Upon review of the statute, it appears that whether Mr.

10  Schilinski knew of Petitioner's involvement in the conspiracy is irrelevant.  The statute

11  specifically states that knowledge of the identities of third-party co-conspirators is not

12  required to find each co-conspirator guilty of the conspiracy.  Applying the statute to

13  Petitioner's case, it appears that the state court's conclusion was reasonable.  This is

14  particularly true in light of other witnesses who testified about Petitioner's participation. For

15  example, Robert Olson testified that he heard Petitioner's name in connection with the

16  alleged conspiracy.   (Doc. 14, Exh. T at 196–97).  In light of the statute and the other

17  witnesses who testified to Petitioner's involvement in the conspiracy, Petitioner is unable to

18  demonstrate any prejudice arising from his counsel's failure to call Mr. Schilinski and is

19  therefore unable to substantiate a claim for ineffective assistance of counsel.

20       Petitioner also asserts that his counsel's failure to call Mr. Schilinski as a witness

21  violated his "right to confront witnesses against him."  (Doc. 23 at 25).  As previously

22  discussed, however, Mr. Schilinski's statements were introduced through the co-conspirator

23  exception to hearsay.  And, because statements by co-conspirators are not testimonial,

24

25       [4] A.R.S. 13-1003(B) reads: "If a person guilty of conspiracy, as defined in subsection

26  A of this section, knows or has reason to know that a person with whom such person

27  conspires to commit an offense has conspired with another person or persons to commit the
    same offense, such person is guilty of conspiring to commit the offense with such other

28  person or persons, whether or not such person knows their identity."

1    Petitioner has no right under the Confrontation Clause to examine Mr. Schilinski.  See

2    Crawford, 541 U.S. at 56.  Accordingly, Petitioner is not entitled to habeas relief on this

3    ground.

4              **13.    Petitioner's Counsel's Failure to Exclude Hearsay Testimony**

5              Petitioner argues that his trial counsel was constitutionally deficient because he did

6    not object to the statements by coconspirators described in Section 3, *supra*.  As previously

7    discussed, the trial court concluded that those statements were not inadmissible hearsay.  In

8    essence then, Petitioner argues that his counsel was constitutionally deficient for failing to

9    take a course of action that was likely to be unsuccessful.  That argument is plainly contrary

10   to federal law.  See Rupe v. Wood, 93 F.3d 1434, 1445 (9th Cir.  1996) (finding that "the

11   failure to take a futile action can never be deficient performance.").  Accordingly, Petitioner

12   is not entitled to habeas relief on this claim.

13             **14.    Application of Evanchyk v. Stewart, and Arizona v. Phillips**

14             Petitioner asserts that he is entitled to relief pursuant to Evanchyk v. Stewart, 202

15   Ariz.  476, 47 P.3d 1114 (2002), and Arizona v. Phillips, 202 Ariz.  427, 46 P.3d 1048

16   (2002).  Petitioner raised this argument below and the state court determined during the post-

17   conviction proceedings that neither Evanchyk nor Phillips applied to Petitioner's case.  (Doc.

18   14, Exh.  M).  First, the state court found that Evanchyk did not apply because the holding

19   "that conspiring to commit first degree [murder] is a specific intent crime is not new law and

20   is not inconsistent with the instruction given in this case."  Id.  Next, the court determined

21   that Phillips was inapplicable because there was nothing in that case "that would have

22   applied to [Petitioner's] case or would have changed the instructions given in [Petitioner's]

23   case."  Id.

24             The Court points out that it is bound by state court's interpretation of state law unless

25   that interpretation is untenable and amounts to subterfuge to avoid federal review.  Butler,

26   528 F.3d at 642.  Upon review of Evanchyk and Phillips, it does not appear that the state

27   court's interpretation was untenable.  Evanchyk essentially stands for the proposition that a

28   defendant cannot be found guilty of conspiracy to commit first degree murder "when that

1   conviction is based only on the commission of felony murder." <u>Evanchyk</u>, 202 Ariz. at 481.

2   To the extent that <u>Evanchyk</u> reiterates legal standards from established Arizona cases relating

3   to conspiracy to commit first degree murder, Petitioner is not afforded any relief on that

4   ground because <u>Evanchyk</u> does not represent a significant change in Arizona law.  Morever,

5   Petitioner was not sentenced based on the commission of felony murder, so that case is not

6   applicable here.  Furthermore, Petitioner's claim that the trial court's jury instructions failed

7   to require that the jury find "specific intent to kill," is unpersuasive.  (Doc. 23 at 27).  Upon

8   reviewing the pertinent jury instructions, it is clear that, although the conspiracy instruction

9   referred to first degree murder generally, the trial court went on to outline the elements of

10   first degree murder, including the specific intent required.  (Doc. 28, Exh. DD).

11   Similarly, <u>Phillips</u> does not address any issue relevant to Petitioner's case.  <u>Phillips</u>

12   relates to the *mens rea* requirement for the substantive offense of first degree murder and to

13   the concept of accomplice liability.  It does not appear that the holding in <u>Phillips</u> is factually

14   or legally relevant to Petitioner's case.  Accordingly, Petitioner is not entitled to habeas relief

15   on this ground.

16   ### 15.   Shackling in Front of the Jury

17   Petitioner asserts he is entitled to habeas relief because his Sixth and Fourteenth

18   Amendment rights were violated by his trial counsel's failure to ensure Petitioner had a fair

19   trial.  Petitioner contends he did not have a fair trial because his trial counsel did not object

20   to Petitioner being shackled in front of the jury.  Petitioner has not demonstrated any

21   prejudice resulting from his counsel's failure to object to Petitioner being shackled.  In order

22   to show that his rights to due process of law have been violated, Petitioner must demonstrate

23   that the shackling "had substantial or injurious effect or influence in determining the *jury's*

24   *verdict*." <u>Rhoden v. Rowland</u>, 172 F.3d 633, 637 (9th Cir. 1999) (emphasis added); <u>see</u> <u>also</u>

25   <u>Castillo v. Stainer</u>, 997 F.2d 669 (9th Cir. 1993).  Because the jury did not observe Petitioner

26   in shackles until *after* the verdict had been rendered, he cannot demonstrate that the shackling

27   had any effect on the jury's verdict.  Accordingly, Petitioner is not entitled to habeas relief

28   on this ground.

**16.     Petitioner's Counsel's Failure to Cite to <u>Evanchyk</u> and <u>Phillips</u>**

Petitioner alleges that his appellate counsel's performance was unconstitutionally deficient because counsel failed to effectively brief the issues of premeditation and specific intent in the Petitioner's direct appeal by failing to supplement his arguments with citations to <u>Evanchyk</u> and <u>Phillips</u>, which were decided while Petitioner's appeal was pending. Petitioner is not entitled to relief on this ground. Petitioner raised this argument below, and the state trial court determined that reliance on <u>Evanchyk</u> or <u>Phillips</u> would not have provided Petitioner with any relief. (Doc. 14, Exh. M). As previously stated, this Court is bound by a state court's interpretation of its own law unless that interpretation is "untenable and amounts to subterfuge to avoid federal review." <u>Butler</u>, 528 F.3d at 642. Furthermore, as previously discussed in Section 14 *supra*, there is nothing in the record that would indicate that the state court's decision was untenable or amounts to subterfuge. Therefore, Petitioner cannot demonstrate that he suffered any prejudice resulting from his counsel's failure to rely on <u>Evanchyk</u> or <u>Phillips</u>. Accordingly, Petitioner is not entitled to relief on this ground.

## IV.     CONCLUSION

The Court concludes that Petitioner is not entitled to habeas relief on any of his claims. Therefore, Petitioner's Petition for Writ of Habeas Corpus is denied and the judgment shall be entered accordingly.

**Accordingly,**

**IT IS HEREBY ORDERED** that Petitioner's Petition for Writ of Habeas Corpus is denied with prejudice.

**IT IS FURTHER ORDERED** denying Petitioner's Certificate of Appealability and Leave to Proceed In Forma Pauperis, as Petitioner has not made a substantial showing of the denial of a constitutional right.

/ / /

1    **IT IS FURTHER ORDERED** denying Petitioner's Motion for Certificate of

2    Appealability (Doc. 32) as moot.

3    **IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment

4    accordingly.

5    DATED this 13th day of June, 2011.

6

7

8    _____

9    Mary H. Murguia
     United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28